# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| MARJORIE CARTER an individual; | § | |
| on behalf of herself and all others | § | |
| similarly situated, | § | |
| | § | |
| Plaintiff, | § | CAUSE NO.:  4:15-cv-01695 |
| | § | |
| vs. | § | |
| | § | |
| FIRST NATIONAL COLLECTION | § | |
| BUREAU, INC., a Nevada Corporation; | § | |
| LVNV FUNDING, LLC, a Delaware | § | |
| Limited Liability Company; | § | |
| RESURGENT CAPITAL SERVICES, | § | |
| L.P., a Delaware Limited Partnership: | § | |
| ALEGIS GROUP, LLC, a Delaware | § | |
| Limited Liability Company, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Francis R. Greene
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

Daniel J. Ciment
Attorney-in-Charge
HESTON CIMENT, PLLC
1800 South Mason Road, Suite 240
Katy, Texas 77450
Telephone: (713) 270-4833
Facsimile: (713) 583-9296

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. i

I.      NATURE AND STAGE OF THE PROCEEDING ............................................................. 2

II.     STATEMENT OF THE ISSUES AND THE STANDARD OF REVIEW .................. 2

III.    FACTS ...................................................................................................................... 2

IV.     SUMMARY OF THE ARGUMENT ................................................................... 4

V.      ARGUMENT ............................................................................................................. 5

        A.  The Fair Debt Collection Practices Act ............................................................ 5

        B.  Plaintiff's Complaint Satisfies *Iqbal* and *Twombly* ......................................... 7

        C.  Decisions from the Sixth and Seventh Circuits Support Denial of
            Defendants' Motion ................................................................................................ 9

        D.  The Views of the FTC and CFPB Further Support Denial of
            Defendants' Motion .............................................................................................. 12

        E.  Research Conducted by Plaintiff's Disclosed Expert Supports the Plausibility
            of Plaintiff's Claim that the Letter at Issue Would be Misleading
            and/or Deceptive to the Least Sophisticated Consumer ............................................. 17

        F.  Defendants' Arguments are Simply Without Merit ................................................ 18

VI.     CONCLUSION ........................................................................................................ 22

## TABLE OF AUTHORITIES

**Cases**

*Albert v. Carovano*, 851 F.2d 561, 571 n. 3 (2d Cir. 1988)................................................8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................2, 4, 7, 9

*Avila v. Rubin*, 84 F.3d 222, 226 (7th Cir. 1996)..................................................9

*Baker v. G.C. Services Corp.*, 677 F.2d 775, 777,780-781 (9th Cir. 1982).................................5, 7

*Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1077-1078 (7th Cir. 1992) ........................8

*Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir.1997)..................................................7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................2, 4, 7-9

*Bridge v. Ocwen Fed. Bank*, 681 F.3d 355, 361 (6th Cir. 2012) ..................................................17

*Buchanan v. Northland Group, Inc.*, 776 F.3d 393, 395
    (6th Cir. Jan. 13, 2015) ..................................................4, 9-14, 16, 18, 20-22

*Cacace v. Lucas*, 775 F. Supp. 502, 505 (D. Conn. 1990)..................................................7

*Castro v. Collecto, Inc.*, 634 F.3d 779, 783 (5th Cir. 2011) ..................................................20

*Cirkot v. Diversified Fin. Services, Inc.*, 839 F. Supp. 941 (D. Conn. 1993) ..................................................6

*Clifford Steers & Shenfield Inc. v. FTC*, 392 F.2d 921, 925 (6th Cir. 1968)..................................................16

*Clomon v. Jackson*, 988 F.2d 1314,1318 (2d Cir. 1993) ..................................................6, 7

*Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 666 (7th Cir. 2001)..................................................7

*Daugherty v. Convergent Outsourcing, Inc.*, No H-14-3306, 2015 WL 3823654, *3-7
    (S.D. Texas June 18, 2015)..................................................5, 20, 21

*Delgado v. Capital Mgmt. Services, LP et al.*, No. 13-8009 (7th Cir.)........................10, 12-14, 16

*Dunham v. Portfolio Recovery Assocs.*, 663 F.3d 997, 1002 (8th Cir. 2011)..................................................17

*Freyermuth v. Credit Bureau Servs.*, 248 F.3d 767 (8th Cir. 2001) ..................................................5, 18-20

*FTC v. Colgate-Palmolive*, 380 U.S. 374, 384-385 (1965) ..................................................16

*FTC v. Shaffner*, 626 F.2d 32,35 (7th Cir. 1980)..................................................7

*Funderburk v. Afni, Inc.*, 2:14-cv-06361-PD (E.D. Pa. Mar. 19, 2015) ..................................................19

*Gonzalez v. Kay*, 577 F.3d 600 (5th Cir. 2009) ...............................................................8

*Goswami v. Am. Collections Enter.*, 377 F.3d 488, 495 (5th Cir. 2004) ......................6, 8

*Hamilton v. United Healthcare of La.*, 310 F.3d 385, 388 (5th Cir. 2002) ......................5

*Hatmaker v. Memorial Medical Center*, 619 F.3d 741, 743 (7th Cir. 2010)...................9

*Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28 (3d Cir. 2011)...........................5,18,19,20

*Johnson v. Capital One Bank*, No. CIV. A. SA00CA315EP, 2000 WL 1279661
    (W.D. Tex. May 19, 2000)........................................................................21, 22

*Keele v. Wexler*, 149 F.3d 589,593-594 (7th Cir. 1998)............................................5,7

*Keeton v. Tate & Kirlin Associates et al.*, 1:14-cv-00130 (S.D. Tex. Apr. 24, 2015)............11, 22

*Mace v. Van Ru Credit Corp.*, 109 F.3d 338 (7th Cir. 1997) ..........................................5

*McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir. 1992) ......................................5

*McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1019-1020
    (7th Cir. 2014)........................................................ 4, 9, 10, 12, 13, 16, 18, 20-22

*McMurray v. ProCollect, Inc.*, 687 F.3d 665, 669 (5th Cir. 2012)............................6, 20

*McRill v. Nationwide Credit Inc.*, 2012 U.S. Dist. LEXIS 183009, *17
    (C.D. Ill. Dec. 6, 2012) ...........................................................................12

*Minnesota v. Midland Funding LLC*, No. 27-cv-11-11510 (Hennepin Co. (Minn.) Dist. Ct........16

*N.C. Freed Co. v. Board of Governors*, 473 F.2d 1210, 1214 (2d Cir. 1973)................6

*Peter v. GC Services, L.P.*, 310 F.3d 344, 349 n1 (5th Cir. 2002) ..................................6

*Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 27 (2d Cir. 1989) ...................7

*Rawson v. Source Receivables Management LLC*, 2012 U.S. Dist. LEXIS 125205, *2
    (N.D. Ill. Sept. 4, 2012) ...........................................................................12

*Rodriguez v. Fulton Friedman & Gullace, LLP*, 2012 WL 3756589, *3 (S.D. Tex. 2012)............2

*Rogers v. B-Real, L.L.C.*, 391 B.R. 317 (Bankr. M.D. La. 2008)......................................7

*Shorty v. Capital One Bank*, 90 F. Supp. 2d 1330  (D. N.M. 2000)........................21, 22

*Simeon Mgmt. Corp. v. FTC*, 579 F.2d 1137, 1145 (9th Cir.1978)...............................17

*Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1238 (5th Cir. 1997)...................7

*Torrico v. International Business Machines Corp.*, 213 F.Supp.2d 390, 396 (S.D.N.Y. 2002) .....8

*Wallace v. Capital One Bank*, 168 F. Supp. 2d 526  (D. Md. 2001) ........................................21, 22

*Whatley v. Universal Collection Bureau*, 525 F. Supp.1204, 1206 (N.D.Ga. 1981)......................7

*Williams Co. v. Federal Trade Commission*, 381 F.2d 884, 889 (6th Cir. 1967).........................16

**Statutes**

15 U.S.C. §1692d.........................................................................................................................5

15 U.S.C. §1692e...............................................................................................5, 8, 13, 21

15 U.S.C. §1692e(2)(A) .............................................................................................................8

15 U.S.C. §1692e(5) ...................................................................................................................8

15 U.S.C. §1692e(10) .................................................................................................................8

15 U.S.C. §1692f .................................................................................................................5, 8

15 U.S.C. §1692g.......................................................................................................................22

15 U.S.C. §1692m(a) ................................................................................................................14

15 U.S.C. §1601, *et seq.*............................................................................................................6

6 N.Y. City R. §2-191 ...............................................................................................................16

940 Code Mass. Reg. §7.07(24) ...............................................................................................16

N.C. Gen. Stat. §75-55(1) .........................................................................................................16

N.M. Admin. Code §12.2.12.1 *et seq.* ....................................................................................16

**Rules of Court**

Fed. R. Civ. P. 8 .........................................................................................................................8

Fed. R. Civ. P. 12(b)(6).............................................................................................................2

**Treatises, Commentaries and Law Reviews**

Annual Statistical Report for the Texas Judiciary ......................................................................21

"Collecting Consumer Debts: The Challenges of Change – A Workshop Report"
(February 2009) ; .....................................................................................................................14

"Repairing a Broken System: Protecting Consumers in Debt Collection Litigation and
Arbitration (July 2010) ......................................................................................14

Testing Materiality under the Unfair Practices Acts: What Information Matters When Collecting
Time-Barred Debts? ...................................................................................5, 17

"The Structure and Practices of the Debt Buying Industry" (January 2013).................................14

**Other Authorities**

S. Rep. No. 382, 95th Cong., 1st Sess. 3 (1977), Reprinted in 1977 USCCAN 1695, 1697.............6

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| MARJORIE CARTER an individual; | § | |
| on behalf of herself and all others | § | |
| similarly situated, | § | |
| | § | |
| Plaintiff, | § | CAUSE NO.:  4:15-cv-01695 |
| | § | |
| vs. | § | |
| | § | |
| FIRST NATIONAL COLLECTION | § | |
| BUREAU, INC., a Nevada Corporation; | § | |
| LVNV FUNDING, LLC, a Delaware | § | |
| Limited Liability Company; | § | |
| RESURGENT CAPITAL SERVICES, | § | |
| L.P., a Delaware Limited Partnership: | § | |
| ALEGIS GROUP, LLC, a Delaware | § | |
| Limited Liability Company, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiff, Marjorie Carter, on behalf of herself and all others similarly situated, respectfully submits this opposition to the motion to dismiss her claims under the Fair Debt Collection Practices Act ("FDCPA") filed by Defendants First National Collection Bureau, Inc. ("FNCB"), LVNV Funding, LLC ("LVNV Funding"), Resurgent Capital Services, L.P. ("Resurgent") and Alegis Group, LLC ("Alegis") (collectively "Defendants"). Defendants' Motion to Dismiss should be denied because reported circuit court decisions from the Sixth and Seventh Circuits, the findings of the Federal Trade Commission ("FTC") and the Consumer Financial Protection Bureau ("CFPB"), and the research of Plaintiff's disclosed expert, Professor Timothy Goldsmith, *overwhelming* suggest that a letter like that at issue here – which offers to "settle" a time-barred debt without disclosing that the debt is time-barred and not legally

1

enforceable – could be misleading or deceptive to the least sophisticated consumer. According, Defendants' Motion to Dismiss should be denied.

## I.     NATURE AND STAGE OF THE PROCEEDING

This case is a class action under the FDCPA. Plaintiff filed her initial Complaint on June 15, 2015 (Doc. 1.) Defendants filed their Motion to Dismiss ("Motion") pursuant to Fed. R. Civ. P. 12(b)(6) on July 8, 2015. (Doc. 10.)

## II.    STATEMENT OF THE ISSUES AND THE STANDARD OF REVIEW

The issue before the Court is whether Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) should be granted or denied. The standard of review is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Under those cases, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Rodriguez v. Fulton Friedman & Gullace, LLP*, 2012 WL 3756589, *3 (S.D. Tex. 2012) (quoting *Iqbal* and *Twombly*, citations omitted). (Appendix ("App."). A.) "A claim has facial plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citations omitted). The plausibility standard requires more than a sheer possibility that a defendant has acted unlawfully. *Id.* "A pleading need not contain detailed factual allegations, but must set forth more than 'labels and conclusions, and a formulaic recitation of the elements of action will not do." *Id.* (quoting *Twombly*, citation omitted). As Plaintiff has pled a plausible claim for relief, Defendants' Motion should be denied.

## III.   FACTS

Defendants LVNV Funding, Resurgent, and Alegis are involved in the business of

purchasing consumer debts and attempting to collect them. LVNV Funding purchases the debts from "credit grantors including banks, finance companies, and other debt buyers" usually for less than ten cents on the dollar. (Complaint ("Cmplt.") ¶¶ 9-10, 23.) LVNV Funding attempts to collect the debts it has purchased by sending collection letters and making collection calls as well as filing lawsuits. (Cmplt. ¶¶ 11, 13.) LVNV Funding has been the plaintiff in more than 1,000 collection lawsuits that have been pending during the year immediately prior to the filing of this action. (Cmplt. ¶ 12.)

All actions taken in the name of LVNV Funding are in fact taken by Defendant Resurgent pursuant to a written agreement and power of attorney that LVNV Funding has executed in favor of Resurgent. (Cmplt. ¶ 22) According to LVNV Funding's website, Resurgent "is a manager and servicer of domestic and international consumer debt portfolios . . . and has been hired by LVNV Funding to perform these services on its behalf. Resurgent, a licensed debt collector, may perform these activities directly, or in many cases will outsource the recovery activities to other specialized, licensed collection agencies." (Cmplt. ¶ 24.) Defendant Alegis is the sole general partner of Resurgent. As such, Resurgent's acts are attributable to Alegis. (Cmplt. ¶ 20.) LVNV Funding and Resurgent are under common ownership, being part of the Sherman Financial Group. (Cmplt. ¶ 26.)

Resurgent, on behalf of LVNV Funding, retained defendant FNCB to collect a debt from Plaintiff, a resident of Houston, Texas. (Cmplt. ¶¶ 4, 27, 29.) On or about January 7, 2015, FNCB sent Plaintiff a letter attached as Exhibit A to the Complaint, seeking to collect on a credit card account originally opened with Providian Financial Corp. ("Providian"). (Cmplt. ¶ 29, and Exhibit A.) The letter offers a settlement of the alleged debt. (Cmplt. ¶ 37, and Exhibit A.) The

3

January 7, 2015 letter was the first letter Plaintiff had received from Defendants seeking to collect on the Providian account. (Cmplt. ¶ 30.) On January 7, 2015, the statute of limitations for bringing suit on the Providian account had expired as more than four years had passed since the last payment or activity on the account (Cmplt. ¶¶ 32, 34.) The letter did not disclose that the debt was time-barred and not legally enforceable. (Cmplt. ¶¶ 39-40.)

## IV.   SUMMARY OF THE ARGUMENT

The Complaint satisfies the requirements of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. V. Twombly*, 550 U.S. 544 (2007). Defendants' arguments to the contrary are vague and conclusory.

Plaintiff states a plausible claim for relief as claims virtually identical to hers have been upheld by the Sixth and Seventh Circuits. *Buchanan v. Northland Group, Inc.*, 776 F.3d 393 (6th Cir. 2015) (*pet. for rehearing en banc denied* on Mar. 13 2015) and *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014). In those cases, the courts held that letters which were similar in all material respects to the letter at issue here were deceptive and misleading to the least sophisticated or unsophisticated consumer.

The plausibility of Plaintiff's claim is also supported by the Federal Trade Commission ("FTC") and the Consumer Financial Protection Bureau ("CFPB"), which have argued in various fora, including *amicus curiae* briefs filed in the *Buchanan* and *McMahon* cases (Appendices B and C) that the least sophisticated or unsophisticated consumer could be deceived or misled by a letter offering a settlement of a time-barred even absent any explicit threat of litigation.

Plaintiff's claim is also supported by her disclosed expert, Timothy Goldsmith, Professor of Psychology at University of New Mexico, who with a colleague, Professor Nathalie Martin,

did a study, "Testing Materiality under the Unfair Practices Acts: What Information Matters When Collecting Time-Barred Debts". (App. D.) The study queried debtors as to their relative willingness to pay a debt when they knew or did not know that the debt was time-barred. The study clearly demonstrated that whether a debt is time-barred is material to a significant percentage of consumers.

Finally, the cases cited by Defendants, including *Huertas v. Galaxy Asset Mgmt.,* 641 F.3d 28 (3d Cir. 2011), *Freyermuth v. Credit Bureau Servs.*, 248 F.3d 767 (8th Cir. 2001), and *Daugherty v. Convergent Outsourcing, Inc.*, No H-14-3306, 2015 WL 3823654, *3-7 (S.D. Texas June 18, 2015) (App. E), are either distinguishable or not persuasive.

## V.    ARGUMENT

### A.    The Fair Debt Collection Practices Act

The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors". 15 U.S.C. §1692e; *Hamilton v. United Healthcare of La.*, 310 F.3d 385, 388 (5th Cir. 2002). The Act is designed to protect consumers who have been victimized by unscrupulous debt collectors, regardless of whether a valid debt actually exists. *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir. 1992) citing *Baker v. G.C. Services Corp.*, 677 F.2d 775, 777 (9th Cir. 1982); *see also*, *Mace v. Van Ru Credit Corp.,* 109 F.3d 338 (7th Cir. 1997); *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements, in connection with the collection of a debt. 15 U.S.C. §§ 1692d, 1692e and 1692f. Indeed, when enacting the FDCPA, Congress recognized the

5

> universal agreement among scholars, law enforcement officials, and even debt collectors that the number of persons who willfully refuse to pay just debts is minuscule [sic]. . . . [T]he vast majority of consumers who obtain credit fully intend to repay their debts. When default occurs, it is nearly always due to an unforeseen event such as unemployment, overextension, serious illness, or marital difficulties or divorce.

S. Rep. No. 382, 95th Cong., 1st Sess. 3 (1977), reprinted in 1977 USCCAN 1695, 1697. (App. F.)

Courts in the Fifth Circuit generally hold that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of the "unsophisticated or least sophisticated consumer". *McMurray v. ProCollect, Inc.*, 687 F.3d 665, 669 (5th Cir. 2012) (quoting *Goswami v. Am. Collections Enter.*, 377 F.3d 488, 495 (5th Cir. 2004). The Fifth Circuit elects not to distinguish between the two standards perceiving that "the difference between the standards is *de minimis* at most." *Peter v. GC Services, L.P.*, 310 F.3d 344, 349 n1 (5th Cir. 2002). The basic purpose of these standards is to ensure that the FDCPA protects all consumers, the "gullible as well as the shrewd." *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993). Both standards are objective – i.e., whether Plaintiff or any class member was actually misled is ***not*** an element of an FDCPA claim.

Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§1601, *et seq.*, the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes. *Cirkot v. Diversified Fin. Services, Inc.*, 839 F. Supp. 941 (D. Conn. 1993). The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated. *N.C. Freed Co. v. Board of Governors,* 473 F.2d 1210, 1214 (2d

Cir. 1973).

Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. *Rogers v. B-Real, L.L.C.*, 391 B.R. 317 (Bankr. M.D. La. 2008); *Keele v. Wexler*, 149 F.3d 589, 593-94 (7th Cir. 1998)), citing *Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir.1997); *see also*; *Baker, supra,* 677 F.2d at 780-1.

The FDCPA encourages consumers to act as "private attorneys general" to enforce the public policies expressed therein. *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 666 (7th Cir. 2001); *Baker, supra,* 677 F.2d at 780; *Whatley v. Universal Collection Bureau*, 525 F. Supp.1204, 1206 (N.D.Ga. 1981). "Congress intended the Act to be enforced primarily by consumers . . . ." *FTC v. Shaffner,* 626 F.2d 32, 35 (7th Cir. 1980). "Congress painted with a broad brush in the FDCPA to protect consumers from abusive and deceptive debt collection practices, and courts are not at liberty to excuse violations where the language of the statute clearly comprehends them . . . ." *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 27 (2d Cir. 1989).

Plaintiff need not prove intent, bad faith or negligence in an FDCPA case. The "FDCPA is a strict liability statute," and "proof of one violation is sufficient to support summary judgment for the plaintiff." *Cacace v. Lucas,* 775 F. Supp. 502, 505 (D. Conn. 1990); *see also, Taylor v. Perrin, Landry, deLaunay & Durand,* 103 F.3d 1232, 1238 (5th Cir. 1997) ("[a] single violation...is sufficient"), quoting *Clomon*, *supra*, 988 F.2d at 1318.

### B.     Plaintiff's Complaint Satisfies *Iqbal* and *Twombly*

Defendants' boilerplate argument that the Complaint does not meet the pleading requirements, summarized *supra* in Section II,  set forth in *Ashcroft v. Iqbal*, 556 U.S. 662

(2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) is meritless. Defendants do not point to any allegations that could be construed as conclusory nor any formulaic recitation of the elements of the action. Instead, Defendants vaguely and conclusorily assert that Plaintiff's "claims against FNCB are only 'labels and conclusions.'" (Motion, p. 3.) Defendants also appear to take the position that the sending of a collection letter, "devoid of any other action", cannot violate the FDCPA. As scores of cases attest, this position is plainly false; without more, the sending of a collection letter can violate the FDCPA. *See, e.g., Gonzalez v. Kay*, 577 F.3d 600 (5th Cir. 2009);  *Goswami v. Am. Collections Enter.,* 377 F.3d 488, 495 (5th Cir. 2004).

Defendants also complain that Plaintiff "merely mentions entire sections of the U.S. Code related to debt collection and consumer protection in the hope that the court may fill in the gaps and find the legal arguments that may apply to this case." (Motion, p. 4.) The suggestion that the Complaint must contain legal arguments is contrary to Fed. R. Civ. P. 8, which merely requires "a  short and plain statement of the claim showing that the pleader is entitled to relief".

Neither *Iqbal* nor *Twombly* require a complaint to contain legal argument. Separately, Defendants assert that "Plaintiff did not plead specifically to any specific violation of § 1692e or § 1692f". (Motion, p. 4.) This assertion is simply false. Plaintiff claims specifically that Defendants' letter violates § 1692e, § 1692e(2)(A), § 1692e(5),  § 1692e(10), and § 1692f. (Cmplt. ¶¶ 50-51.)

For the purposes of a motion to dismiss, a complaint must "give full notice of the circumstances giving rise to the plaintiffs claim for relief" but a plaintiff need not "also correctly plead the legal theory or theories and statutory basis supporting the claim." *Torrico v. Int'l Bus. Mach. Corp.*, 213 F. Supp. 2d 390, 396 (S.D.N.Y.2002) (citations and internal quotations

omitted); *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1077-1078 (7ᵗʰ Cir.1992)

("Instead of asking whether the complaint points to the appropriate statute, a court should ask

whether relief is possible under any set of facts that could be established consistent with the

allegations."); *Albert v. Carovano*, 851 F.2d 561, 571 n. 3 (2d Cir. 1988) ("The failure in a

complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim.

Factual allegations alone are what matters.") This principle has not changed in the wake of

plausibility pleading requirements. *Hatmaker v. Memorial Medical Center*, 619 F.3d 741, 743

(7ᵗʰ Cir. 2010) ("Although [*Twombly* and *Iqbal*] require that a complaint in federal court allege

facts sufficient to show that the case is plausible, they do not undermine the principle that

plaintiffs in federal courts are not required to plead legal theories.") (internal citations omitted).

### C.    Decisions from the Sixth and Seventh Circuits Support Denial of Defendants' Motion

Defendants' Motion should be denied because Plaintiff states a plausible claim that the

letter at issue here could be misleading to the least sophisticated consumer. Recent decisions by

the Sixth and Seventh Circuits in *Buchanan v. Northland Group, Inc.*, 776 F.3d 393 (6th Cir.

Jan. 13, 2015) (*pet. for rehearing en banc denied* on Mar. 13, 2015*) and *McMahon v. LVNV

Funding, LLC*, 744 F.3d 1010, 1019 (7th Cir. 2014), hold that letters that were similar *in all

material respects to the letter at issue* **were** deceptive and misleading to the least sophisticated

consumer.[1] Both decisions involved collection letters seeking to collect debts owned by LVNV

---

[1] The Seventh Circuit applies the "unsophisticated consumer" standard but it is substantially the same as the "least sophisticated consumer" standard applied outside the Seventh Circuit. *Avila v. Rubin*, 84 F.3d 222, 226 (7th Cir. 1996) ("[W]e don't want to be involved in the splitting of split hairs. Anyway it is viewed, the standard is low, close to the bottom of the sophistication meter.")

Funding. While not binding on this Court, *Buchanan* and *McMahon* support denying

Defendants' Motion because there is no material difference between the letters at issue in those

cases and the letter here.

*McMahon* consolidated two cases for appeal, including an interlocutory appeal of a

denial of a Rule 12(b)(6) motion to dismiss in *Delgado v. Capital Mgmt. Services, LP et al.*, No.

13-8009 (7th Cir.). In *Delgado*, as here, the plaintiff received a collection letter that offered to

"settle" a time-barred debt, but the letter failed to disclose the debt was time-barred. In

*McMahon*, the Seventh Circuit affirmed the *Delgado* court's denial of the motion to dismiss:

> [I]f the debt collector uses language in its dunning letter that would mislead
> an unsophisticated consumer into believing that the debt is legally enforceable,
> regardless of whether the letter actually threatens litigation (the requirement the
> Third and Eighth Circuits added to the mix), the collector has violated the
> FDCPA. Because it is plausible that an unsophisticated consumer would believe a
> letter that offers to "settle" a debt implies that the debt is legally enforceable, it
> was correct in *Delgado* to decline to dismiss the action at this stage, and incorrect
> to dismiss the class allegations in *McMahon*.
>
> The proposition that a debt collector violates the FDCPA when it misleads an
> unsophisticated consumer to believe a time-barred debt is legally
> enforceable, regardless of whether litigation is threatened, is straightforward
> under the statute. Section 1692e(2)(A) specifically prohibits the false
> representation of the character or legal status of any debt, whether a debt is
> legally enforceable is a central fact about the character and legal status of that
> debt.

*McMahon*, 744 F.3d at 1020.

As in *McMahon*, the letter at issue here: (i) offered to settle a time-barred debt; but (ii)

did not disclose the debt was time-barred and not legally enforceable. Also like *McMahon*, the

least sophisticated consumer could erroneously conclude that Defendants' "offer" of

"settlement"

implied that the debt was legally enforceable.

10

*Buchanan*, not cited by Defendants, supports the same conclusion. In *Buchanan*, the plaintiff, as here, received a collection letter which offered to "settle" one of LVNV Funding's time-barred debts. *Buchanan*, 776 F.3d at 395.The letter did not disclose that the debt was time-barred, nor that a payment would re-start the statute of limitations clock. *Id.* at 395-396. The district court decision granted the defendant's Rule 12(b)(6) motion to dismiss. *Buchanan* reversed and held the plaintiff had stated a plausible claim for relief:[2]

> Was *this* letter misleading? One reason to say yes is that a "settlement offer" with respect to a time-barred debt may falsely imply that payment could be compelled through litigation. Formal and informal dictionaries alike contain a definition of "settle" that refers to concluding a lawsuit. . . . .
> The other problem with the letter is that an unsophisticated debtor who cannot afford the settlement offer might nevertheless assume from the letter that some payment is better than no payment. Not true: Some payment is worse than no payment. The general rule in Michigan is that partial payment restarts the statute-of–limitations clock, giving the creditor a new opportunity to sue for the *full* debt. As a result, paying anything less than the settlement offer exposes a debtor to a substantial new risk. This point is almost assuredly not within the ken of most people, whether sophisticated, whether reasonably unsophisticated, or whether unreasonably unsophisticated.

*Id*. at 399 (Emphasis in Original) (citations omitted).

*Buchanan*'s analysis applies on all-fours to Defendants' letter here. Just as in *Buchanan,* the letter here (i) offered to settle a time-barred debt, (ii) did not disclose that the  debt was time-barred, and (iii) did not disclose that a payment would re-start the statute of limitations clock for Defendants to sue the consumer (and report it on their credit). As in *Buchanan*, the least sophisticated consumer could erroneously conclude from reading Defendants' letter that the debt was legally enforceable. *See also, Keeton v. Tate & Kirlin Associates et al.*, 1:14-cv-00130 (S.D.

---

[2]The panel majority in *Buchanan* included the Honorable Lee Rosenthal, District Judge, Southern District of Texas.

11

Tex. Apr. 24, 2015), Magistrate Judge's R&R accepted May 26, 2015 (denying LVNV's motion

for summary judgment on the plaintiff's FDCPA claim, holding it was question of fact whether

the least sophisticated consumer would find offer of settlement of an undisclosed time-barred

debt misleading or deceptive); (App. G.); *McRill v. Nationwide Credit Inc.*, 2012 U.S. Dist.

LEXIS 183009, *17 (C.D. Ill. Dec. 6, 2012) ("It is plausible that, even absent a threat of

litigation, a collection letter that fails to disclose that a debt is time-barred, or the dates of the

transactions giving rise to the debt (which would, at least, give the consumer some idea of how

old the debt was), would deceive at least a significant fraction of the population as to the

character and legal status of the debt by creating the impression that the debt collector could sue

to collect.") (App. H.); *Rawson v. Source Receivables Management LLC*, 2012 U.S. Dist. LEXIS

125205, *2 (N.D. Ill. Sept. 4, 2012) (same). (App. I.)

### D. The Views of the FTC and CFPB Further Support Denial of Defendants' Motion

The *amici curiae* briefs filed by the FTC and CFPB in the *McMahon/Delgado* and

*Buchanan* cases also support denial of Defendants' Motion. In those briefs, the two federal

agencies argued that the least sophisticated consumer could be deceived and misled by a letter

offering a settlement of a time-barred debt, even absent any explicit threat of litigation:

> Although an implicit threat is a *sufficient* condition of a statutory violation in this context, it is not also a *necessary* condition. That point is the subject of some confusion in the case law. Though there is wide agreement that actual or threatened lawsuits on stale debts violate the FDCPA, a number of courts have inartfully described this principle as if it sets the outer limit on FDCPA liability in time-barred debt cases. . . .

> The "critical issue" is not simply whether there has been an actual or threatened lawsuit, but whether the unsophisticated consumer would be misled or deceived by the debt collector's conduct. Suing and threatening to sue on a time-barred debt are two specific examples of conduct that qualifies. But they

are not the only ones.

> [T]he Commission has concluded that consumers can be misled or deceived when debt collectors seek partial payments on stale debt. In most states, a partial payment restarts the statute of limitations for the entire amount of the debt. The Commission observed that "consumers do not expect" that a partial payment "will have the serious, adverse consequence of starting a new statute of limitations."

> Accordingly, the Commission concluded that a debt collector's solicitation of a partial payment on a time barred debt – implying, incorrectly, that the payment will *reduce* the consumer's legal obligation – can "create a misleading impression as to the consequences of making a payment," thereby violating the FDCPA, 15 U.S.C. §1692e. The Commission stated that "to avoid creating a misleading impression, collectors would need to disclose clearly and prominently to consumers prior to requesting or accepting such payments that (1) the collector cannot sue to collect the debt and (2) providing a partial payment would revive the collector's ability to sue to collect the balance."

> In sum, the debt collector need not make an overt threat or a false or misleading representation about the debt to violate the FDCPA. Rather, the court must consider a practice's effect on unsophisticated consumers from their perspective – for example, in light of circumstances such as their prior collections experience and any preexisting misconceptions. In particular, it will often be relevant that most consumers do not know or understand their legal rights with respect to time-barred debt. In some circumstances, a debt collector may be required to make affirmative disclosures in order to avoid misleading consumers. (Emphasis in original; citations omitted.)

Brief of Amici Curiae Federal Trade Commission and Consumer Financial Protection Bureau Supporting Affirmance, *Delgado v. Capital Management Servs., L.P.*, (App. C, pp. 15-19); *see also,* Brief of Amici Curiae Federal Trade Commission and Consumer Financial Protection Bureau Supporting Reversal in *Buchanan* (App. B, pp. 16-20.)

*McMahon* characterized the views of the FTC and CFPB as "well-reasoned." *McMahon*, 744 F.3d at 1020. In *Buchanan*, the Sixth Circuit noted that in November 2013, the CFPB had requested public comment for potential rulemaking on the issue of time-barred debts and also intended to do further research on time-barred debt issues. *Buchanan*, 776 F.3d at 398. In light of

13

the CFPB's plans for rule-making and on-going research, the *Buchanan* court found it inappropriate to decide *as a matter of law* that the least sophisticated consumer could *not* be misled or deceived by the letter at issue:

> The CFPB posed several questions for public comment directly relevant to this lawsuit. . . . Beyond collecting public comments, the CFPB plans to conduct its own 'consumer testing and other research' on these questions. At this preliminary stage of the case, it seems fair to infer that, if the agency deems these same questions worthy of further study, Buchanan deserves a shot too. A contrary conclusion—that consumer confusion is not even plausible here – would amount to our own declaration that the CFPB's efforts on this score as a waste of time. We are not prepared to say that at this stage of the case.

*Buchanan*, 776 F.3d at 398.

The positions taken by the FTC and CFPB in the *amici* briefs filed in *Delgado* and *Buchanan* were based, in part, on research both agencies conducted in the last few years on the debt collection industry. After extensive research, the FTC has issued a number of reports summarizing its studies of the debt collection industry: "Collecting Consumer Debts: The Challenges of Change – A Workshop Report" (February 2009);[3] "Repairing a Broken System: Protecting Consumers in Debt Collection Litigation and Arbitration (July 2010);[4] and "The Structure and Practices of the Debt Buying Industry" (January 2013).[5] *See also* 15 U.S.C. § 1692m(a) (2009) (reports to Congress).

---

[3]Available at:
https://www.ftc.gov/sites/default/files/documents/reports/collecting-consumer-debts-challenges-change-federal-trade-commission-workshop-report/dcwr.pdf

[4]Available at:
https://www.ftc.gov/sites/default/files/documents/reports/federal-trade-commission-bureau-consumer-protection-staff-report-repairing-broken-system-protecting/debtcollectionreport.pdf

[5]Available at:
https://www.ftc.gov/sites/default/files/documents/reports/structure-and-practices-debt-buying-industry/debtbuyingreport.pdf

The FTC has also brought more than 80 enforcement actions in the last three decades alleging illegal debt collection practices, including actions against debt buyers like LVNV Funding. In 2012, the FTC sued a large debt buyer, Asset Acceptance LLC ("Asset"), claiming it (like Defendants) tried to collect time-barred debts from consumers without disclosure of that fact. (Complaint for Civil Penalties, Injunctive And Other Relief, App. J.) In the complaint against Asset, the FTC alleged that "a large percentage of the individual accounts it collects are past the statute of limitations," that out-of-statute debts "can be revived in many states if the consumer either makes a payment on the debt or states, in writing, an intention to pay it," and that this basically tricks consumers into waiving a defense:

> Many consumers do not know if the accounts that Asset is attempting to collect are beyond the statute of limitations. Consumers also do not realize that making a partial payment on a debt, or making a written promise to pay will, in many instances, revive the debt. When Asset contacts consumers to collect on a debt, many consumers believe they could experience serious negative consequences, including being sued, if they fail to pay the debt. Similarly, many consumers believe that making a partial payment on a debt in response to Asset's collection efforts is a positive action that can avert the negative consequences of nonpayment. **If consumers knew, in connection with a past-statute debt, that Asset had no legal means to enforce collection of the debt, or understood that making a partial payment or a written to promise to pay would revive it, some consumers would likely choose not to make a payment or a written promise to pay.**

[App. J, pp. 10-11, ¶¶ 30-35.] (emphasis added)

Likewise, the CFPB has taken action along with other federal agencies – the FDIC, the Federal Reserve, and the Office of the Comptroller of the Currency – to require that creditors disclose whether debts are time barred. These agencies entered into three consent orders with various American Express ("AmEx") entities on October 1, 2012, which require AmEx to "provide disclosures concerning the expiration of… litigation rights when collecting debt that is

barred by applicable state statutes of limitations," and to advise those to whom AmEx sells or assigns the debts of this requirement. Under the order, the CFPB and FDIC have authority to enforce compliance. (Joint Consent Order, App. K, pp. 6-8.) Such actions have been supplemented by state enforcement of debt collection statutes – whether by statute in North Carolina (N.C. Gen. Stat. §75-55(1)) (App. L), by regulation in Massachusetts, New Mexico and New York City (940 Code Mass. Reg. §7.07(24) (App. M), N.M. Admin. Code §12.2.12.8-9 (App. N) and 6 N.Y. City R. §2-191 (App. O), or by litigation in Minnesota (*Minnesota v. Midland Funding LLC*, No. 27-cv-11-11510 (Hennepin Co. (Minn.) Dist. Ct.). (Consent Judgment, App. G, ¶ 13g., p. 6; ¶ 16h, pp. 7-8.) (App. P.) These state actions show that the actions by the FTC and CFPB with respect to time-barred debts are not based on an irrational view of the law.

Following the *Buchanan* and *McMahon* courts, this Court should similarly respect the views of the FTC and CFPB and not reject what those agencies believe to be plausible claims. In *FTC v. Colgate-Palmolive*, 380 U.S. 374, 384-385 (1965), the Supreme Court held that the FTC "is often in a better position than are courts to determine when a practice is 'deceptive' within the meaning of the Act. This Court has frequently stated that the Commission's judgment is to be given great weight by reviewing courts." *Accord*, *Clifford Steers & Shenfield Inc. v. FTC*, 392 F.2d 921, 925 (6th Cir. 1968) ("reviewing courts are admonished that in cases involving allegedly deceptive advertising the Commission's judgment is to be accorded especial deference") and *Williams Co. v. Federal Trade Commission*, 381 F.2d 884, 889 (6th Cir. 1967) ("it is the [FTC's] function to find... facts [and consider ability of advertising to mislead] and a court should not disturb its determination unless the finding is arbitrary or clearly wrong").

Moreover, as the FTC and CFPB noted in their *amici* brief in *Delgado/McMahon*:

> [C]ourts have found the Commission's "accumulated expertise" persuasive
> regarding "the expectations and beliefs of the public, especially where the
> alleged deception results from an omission of information instead of a
> statement." *Simeon Mgmt. Corp. v. FTC*, 579 F.2d 1137, 1145 (9th Cir.
> 1978); *see also*, *e.g.*, *Bridge v. Ocwen Fed. Bank*, 681 F.3d 355, 361 (6th Cir.
> 2012) (finding FTC Staff Commentary on the FDCPA "instructive");
> *Dunham v. Portfolio Recovery Assocs.*, 663 F.3d 997, 1002 (8th Cir. 2011)
> ("[W]e have found [the FTC's] Staff Commentary [on the FDCPA]
> persuasive in the past.").

(App. C, p. 5.)

> ### E. Research Conducted by Plaintiff's Disclosed Expert Supports The Plausibility of Plaintiff's Claim that the Letter at Issue Would Be Misleading and/or Deceptive to the Least Sophisticated Consumer

This Court should deny Defendants' Motion because a study conducted by Plaintiff's

disclosed expert, Professor Timothy Goldsmith, suggests that the fact that a debt is time-barred is

material to the least sophisticated consumer. The study, "Testing Materiality under the Unfair

Practices Acts: What Information Matters When Collecting Time-Barred Debts?" [App. D], was

conducted by Professor Goldsmith and Professor Nathalie Martin of the University of New

Mexico.

The purpose of the study was to determine how a debtor's desire and willingness to pay a

debt is affected by whether or not it is time-barred. [App. D, § III, p. 373.] In the study, some

participants were told that a debt was no longer legally enforceable while other participants were

not told that fact. When queried as to their willingness to pay the debt, "consumer debtors who

were told that a debt was time-barred were less likely to want to pay the debt in question, making

clear that the fact that a debt is time barred *is* material and thus may be a required disclosure

under unfair trade practice laws." [App. D, § III, p. 373.] Specifically, if notice that the debt was

17

time-barred was included in a collection letter, the study found that 34% of the participants

would not pay the debt; when that notice was not given, only 6% would not pay. [App. D, §

VIC., p. 378.) The study clearly demonstrates that whether a debt is time-barred is material fact

to at least some consumers. Defendants' failure to disclose to Plaintiff that the debt was time

barred was an omission of a material fact in violation of the FDCPA.

### F.   Defendants' Arguments are Simply Without Merit

Citing, *inter alia*, *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28 (3d Cir. 2011),

*Freyermuth v. Credit Bureau Servs.*, 248 F.3d 767 (8th Cir. 2001), and a number of unpublished

cases from outside the Fifth Circuit, Defendants argue (Motion, pp. 5-9) that the letter to Plaintiff

did not violate the FDCPA because it did not contain either a threat of suit or credit reporting.

But both *Buchanan* and *McMahon* hold, and the FTC and CFPB agree, that it does not matter

that a letter offering to settle a time-barred debt does not contain a threat of suit. A letter can be

misleading or deceptive to the least sophisticated consumer even in the absence of a threat of suit

because a settlement offer "with respect to a time-barred debt may falsely imply that payment

could be compelled through litigation." *Buchanan*, 776 F.3d at 399; *McMahon*, 744 F.3d at 1020

("[I] is plausible that an unsophisticated consumer would believe a letter that offers to 'settle' a

debt is legally enforceable . . . .")

In disagreeing with *Huertas* and *Freyermuth*, the Seventh Circuit explained its reasoning:

> In their [the Third and Eighth Circuits'] view, if a dunning letter on a time barred
> debt states that the collector could sue but promised not to, that letter would not
> violate the FDCPA, since no litigation was actually threatened (and indeed was
> expressly rejected). On its face, that may seem reasonable, but closer examination
> reveals why it is not. The plain language of the FDCPA prohibits not only
> threatening to take actions that the collection cannot take, but also the use of any
> false, deceptive, or misleading representation, including those about the character
> or legal status of any debt. If a debt collector stated that it *could* sue on a time

barred debt but was promising to forbear, that statement would be a false
representation about the legal status of that debt.

*Id.* at 1020-1021 (Emphasis in Original).

Just as a debt collector could not expressly misrepresent that a time-barred debt was
within the statute of limitations or misrepresent the date of last payment or some other fact
relevant to the statute of limitations, so the debt collector cannot use misleading language to
suggest or imply any of those things either. It is precisely in a case such as this, where the offer
to "settle" suggests that the debt could be sued upon, that disclosure that no suit can be brought
is especially necessary.

Recently, a district court in the Third Circuit in *Funderburk v. Afni, Inc.*, 2:14-cv-06361-
PD (E.D. Pa. Mar. 19, 2015) (App. Q), held that *Huertas* simply did not address the issue of
whether a debt collector has a duty to disclose, in a collection letter offering to settle a time-
barred debt, that the debt is time-barred, as that issue was not the before the *Huertas* court:

> In *Huertas*, the plaintiff, proceeding *pro se*, argued on appeal that the expiration
> of the statute of limitations "extinguished" his debt. The Court disagreed, ruling
> that the collection letter he received for a legally unenforceable but otherwise
> valid debt did not violate the FDCPA.  In the instant case, Plaintiffs allege that
> AFNI's collection letters violate the FDCPA because, by not disclosing that a
> debt was time-barred, the letters could mislead or deceive the debtor into
> believing the debt was legally enforceable, *regardless* of whether the creditor was
> threatening a   meritless lawsuit. The *Huertas* Court did not address the viability
> of such a claim under the FDCPA. Accordingly, I conclude that Plaintiffs have
> pled a plausible claim for relief and I will deny AFNI's Motion.

(App. Q, pp. 2-3 (citations omitted) (Emphasis in Original).

Although *Freyermuth* was not brought *pro se*, the reasoning of the *Funderburk* court
applies to *Freyermuth*. The issue before the *Freyermuth* court was simply whether it was a
violation of the FDCPA to collect on a time-barred debt. *Freyermuth*, 248 F.3d at 771. Here, the
question is whether it could be a violation of the FDCPA to make an offer to settle a time-barred

19

debt without disclosure that the debt is time-barred. *Freyermuth* never directly addressed that issue; nor did *Castro v. Collecto, Inc.*, 634 F.3d 779, 783 (5th Cir. 2011).

*Daugherty v. Convergent Outsourcing, Inc.*, No H-14-3306, 2015 WL 3823654, *3-7 (S.D. Texas June 18, 2015) (App. E), also cited by Defendants, granted a motion to dismiss a claim similar to that asserted here, relying primarily on *Huertas*, *Freyermuth*, and the dissent in *Buchanan*. For the reasons stated above, *Huertas* and *Freyermuth* are not on point and, in any case, should be disregarded in favor of the holdings in *McMahon and Buchanan*.

As for the dissent in *Buchanan*, *Daugherty* relied on this portion of it:

> The relevant perspective here is that of an unsophisticated debtor – an unsophisticated debtor, moreover, who by definition has received dunning letters for years *without a lawsuit ever having been brought against her*. In that context, the mere fact of another collection letter is itself no reason to think that a lawsuit might follow close behind. And the letter here says nothing about any lawsuit – which is good reason, so far the threat of a lawsuit is concerned, not to distinguish this letter from the legions of letters that surely preceded it. If anything, [debt collector's] willingness to settle the debt at a discount should make the letter seem less threatening, not more.

*Buchanan*, 776 F.3d at 401, quoted in *Daugherty*, 2015 WL 38236545 at *5 (emphasis in the original). The unsophisticated or least sophisticated consumer standard, as it applies to consumers, is a hypothetical measure of sophistication by which a collection letter is to be viewed. The least sophisticated consumer standard requires a collection letter to be viewed from the perspective of "the inexperienced, the untrained and the credulous." *McMurray v. ProCollect*, Inc., 687 F.3d 665, 669 (5th Cir. 2012) (citations omitted). As such, it is not obvious why, "by definition", the unsophisticated consumer has received dunning letters "for years" and without "ever" being sued. Neither of these seem to be a measure of sophistication or lack thereof.

20

In particular, if being sued or not is an element of the least sophisticated consumer standard, then in all likelihood the least sophisticated consumer *has* been sued -- often. LVNV Funding, for one, has been the plaintiff in more than 1,000 collection lawsuits that have been pending during the year prior to the filing of this action. (Cmplt., ¶ 12.) Many other debt buyers like LVNV Funding also bring lawsuits; in Texas alone; 144,926 collection cases were filed between September 1, 2013 and August 31, 2014 (Annual Statistical Report for the Texas Judiciary, App. R), of which undoubtedly a substantial percentage were brought by debt buyers like LVNV Funding. Unlike the plaintiff in *Daugherty*, Plaintiff here has been sued. (App. S.)

Defendants also cite a number of older district court cases, two from outside the Fifth Circuit: *Johnson v. Capital One Bank*, No. CIV. A. SA00CA315EP, 2000 WL 1279661 (W.D. Tex. May 19, 2000) (App. T), *Wallace v. Capital One Bank*, 168 F. Supp. 2d 526 (D. Md. 2001), and *Shorty v. Capital One Bank*, 90 F. Supp. 2d 1330 (D. N.M. 2000). None of these cases address the precise question at issue here, namely whether it could be a violation of the FDCPA to make an offer to settle a time-barred debt without disclosure that the debt is time-barred.

*Wallace*, a case not binding on this Court, recognizes that it *could* be a violation of the FDCPA to induce a consumer to make a payment that revives the statute of limitations by failing to disclose that a debt is time-barred:

> Wallace's contention that it is violative of § 1692e for a collector to trick an unsophisticated debtor into reviving her debt and thus changing her legal position may very well be meritorious. In that event, if a debt validation notice that is silent on the issue of the time-barred nature of the debt is utilized as the catalyst to prompt the debtor's response resulting in the revival, the notice would constitute part of a course of collection conduct that was deceptive.

*Wallace*, 168 F. Supp. 2d at 528. However, *Wallace* held that a plaintiff must allege that a debt

21

collector has engaged in a "course of conduct that tricks a debtor into waiving his legal right to assert a limitations defense" to state a claim for relief. *Id*. at 529. Neither *Buchanan* nor *McMahon*, nor the FTC or CFPB, require the allegation of a "course of conduct" to state a claim. Under those authorities, to state a plausible claim for relief, it is sufficient merely to allege that a letter offered to settle a time-barred debt without disclosing that it was time-barred. Those authorities are more persuasive than *Wallace*.

*Johnson* is distinguishable because the letter at issue did not offer a settlement. Further, the *Johnson* court held that the letter at issue was "neither harassing nor threatening" and did not address whether the letter was misleading or deceptive in omitting the fact that the debt was time-barred. *Johnson*, 2000 WL 1279661, at *2. (App. T.) In *Keeton v. Tate & Kirlin Associates et al.*, 1:14-cv-00130 (S.D. Tex. Apr. 24, 2015),  Magistrate Judge's R&R accepted May 26, 2015, denied LVNV's motion for summary judgment on the plaintiff's FDCPA claim, holding it was a question of fact whether the least sophisticated consumer would find the omission of the disclosure that the debt was time-barred misleading or deceptive in a letter in which a settlement was offered. (App. G.).

*Shorty* held that a letter which seeks to collect a time-barred debt is not misleading if the debt is otherwise valid and the letter at issue contains the disclosures required by 15 U.S.C. §1692g. *Shorty*, 90 F. Supp. 2d at 1332. *Shorty* is simply not persuasive. *Buchanan* and *McMahon*, and the views of the FTC and CFPB render *Shorty* outdated.

**VI.    CONCLUSION**

For all the foregoing reasons, Plaintiff respectfully urges the Court to deny Defendants' Motion to Dismiss.

DATED: July 29, 2015

Respectfully submitted,

s/ Francis R. Greene
Francis R. Greene
EDELMAN, COMBS, LATTURNER &
GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

Daniel J. Ciment
Attorney-in-Charge
HESTON CIMENT, PLLC
1800 South Mason Road, Suite 240
Katy, Texas 77450
Telephone: (713) 270-4833
Facsimile: (713) 583-9296

23

## <u>CERTIFICATE OF SERVICE</u>

       I, Francis R. Greene, hereby affirm under the penalties of perjury that on July 29, 2015, I served the within documents and all supporting papers on the Clerk of this Court using this Court's CM/ECF system. I also certify that the foregoing documents are being served this day on all counsel of record and Parties to this action in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/EFC or in some other authorized manner for those counsel or parties who have not yet appeared or are otherwise not authorized to receive electronic Notices of Electronic Filing.

*s/ Francis R. Greene*
Francis R. Greene
