# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| MARJORIE CARTER an individual; on behalf of herself and all others similarly situated, | § § § § | |
| Plaintiff, | § § | CAUSE NO.: 4:15-cv-01695 |
| vs. | § § § | |
| FIRST NATIONAL COLLECTION BUREAU, INC., a Nevada Corporation; LVNV FUNDING, LLC, a Delaware Limited Liability Company; RESURGENT CAPITAL SERVICES, L.P., a Delaware Limited Partnership: ALEGIS GROUP, LLC, a Delaware Limited Liability Company, | § § § § § § § § § | |
| Defendants. | § § | |

### PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Defendants oppose Plaintiff's motion for class certification. (Doc. 44.) For the foregoing reasons, Plaintiff respectfully urges the Court to grant her motion.

### ARGUMENT

**I.   Plaintiff is An Adequate Class Representative**

Defendants argue that Plaintiff is not an adequate class representative because (a) there "may" be creditors of her mother's estate to whom she may have duties, (b) she has not disclaimed the existence of any such creditors, (c) she has not disclosed to the Court the status of the probate estate, which appears to be closed, and (d) her Declaration in support of class certification is in her personal capacity and not in her capacity as the administrator of her mother's estate. These arguments are without merit.

The Court can take judicial notice of the docket (*Appendix 1*) and filings in Ms. Carter's

probate case. On May 8, 2017, an amended "Inventory, Appraisement and List of Claims" was filed with the court, (*Appendix 2*), which was approved by the court on May 8, 2017. (*Appendix 3*.) There were no creditors listed on the amended inventory. (*Appendix 2*.) There are, therefore, no creditors to whom Plaintiff owes duties which might conflict with her representation of the class.

On May 8, 2017, the court entered a "Drop Order", administratively dropping the case from the court's "*active docket*" but not otherwise dismissing the case. (*Appendix 4*.) There is no basis for Defendants' suggestion, therefore, that Plaintiff does not remain the Independent Administrator of the Estate of Marjorie Ann Carter.

In her Declaration, Plaintiff demonstrates her willingness to represent the class and that she does not have any conflicts of interest. Plaintiff has met Rule 23's adequacy requirement.

## II. Defendants' Liability Is an Issue Which Plaintiff and Class Members Have in Common and Which Should Not Be Decided On a Motion for Class Certification

Defendants argue that Plaintiff has not proven commonality and typicality because (a) LVNV Funding, LLC ("LVNV") is allegedly not a debt collector (and therefore has no liability) and (b) Resurgent Funding, LLC ("Resurgent"), and Alegis Group, LLC ("Alegis") have allegedly no direct or vicarious liability for the actions of First National Collection Bureau ("FNCB"). The liability of LVNV, Resurgent, and Alegis (hereinafter "the LVNV defendants") is not properly decided on a motion for class certification. *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996) ("the strength of a plaintiff's claim should not affect the certification decision.").

A court should address merits questions only if doing so is necessary to determine whether a plaintiff has met Rule 23's requirements. *M.D. v. Perry*, 294 F.R.D. 7, 25 (S.D. Tex. 2013) (quoting *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) ("Merits questions may be considered to the extent—but only to the extent—that they are relevant to

determining whether the Rule 23 prerequisites for class certification are satisfied." Here, the Court need not decide the LVNV defendants' liability, or whether LVNV is a debt collector, to decide whether Plaintiff has met Rule 23's commonality and typicality requirements.

Defendants argue that Plaintiff has not met Rule 23's commonality and typicality requirements because "class members do not and cannot have any common or typical injury against LVNV" and because Plaintiff "cannot show any injury was caused by Resurgent to herself or any class members." (Response, pp. 13, 17.) Defendants' arguments themselves *demonstrate* that there is a common question with respect to Plaintiff and Class Members, namely the liability of the LVNV defendants. If the Court ultimately decides that some or all of the Defendants *are* liable, that decision will affect Plaintiff and the Class equally. Similarly, if the Court holds that some or all of the Defendants are *not* liable, that will also affect Plaintiff and the Class equally.

Citing *Henson v. Consumer USA, Inc.* 137 S. Ct. 1718 (2017), Defendants argue that LVNV is not a debt collector. *Henson* held that an automobile finance company which also purchases debt is not a "debt collector" under the FDCPA's second definition of debt collector, namely a person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due *another*." 15 U.S.C. §1692a(6) (emphasis added). As defendants concede, subject to proof, if LVNV is a debt collector, it is because it meets the FDCPA's first definition of "debt collector", namely "any person who uses any instrumentality of interstate commerce or the mails in any business the *principal purpose* of which is the collection of any debts." *Id*. (emphasis added).

*Chernyakhovskaya v. Resurgent Capital Servs., L.P.*, No. 2:16-cv-1235(JLL), 2017 WL 3593115 (D.N.J Aug. 18, 2017), cited by Defendants, granted LVNV's motion to dismiss because the plaintiff had not alleged enough facts to plausibly suggest that LVNV was a debt collector. In

contrast, on a fuller record, an Indiana district court recently held that LVNV's status as a debt collector was a trial question:

> Here, though the Plaintiff has put forth evidence similar to the contentions raised by the plaintiffs in *Gold* and *Kasalo*—that LVNV purchases and holds ownership in defaulted debts, that "[t]here is no business purpose in purchasing charged off debts if the ultimate goal is not to collect them," and that "[d]ebt buyers don't buy debts to use them as wallpaper, but to turn them into money"—the Plaintiff has additionally put forth the following factual evidence: that LVNV has no employees; that LVNV has a written agreement and power of attorney with Resurgent; that Resurgent is a debt collector; that LVNV files thousands of collection lawsuits in its name; that LVNV described the general character of its business as "consumer debt collection" in its Application for Registration filed in Massachusetts, that a Massachusetts Superior Court determined that "at least 99 percent of LVNV's gross revenue has been derived from collecting on unpaid consumer debts owed by it,"; and that the Illinois Supreme Court has held LVNV to be subject to the state collection act. Therefore, the Plaintiff has provided for the record additional facts regarding LVNV's principal activities that were not present in *Gold*. The Plaintiff also asserts that unlike the defendants in *Gold*, *Kasalo*, and *McAdory*, LVNV did have interactions with the debtors when it filed lawsuits against them.
>
> However, the Court finds that there is still a question of fact regarding LVNV's principal purpose of business that is appropriate for jury determination. . . .

*Mitchell v. LVNV Funding, LLC*, No. 2:12-CV-523-TLS, 2017 WL 6406594, at *6 (N.D. Ind. Dec. 15, 2017).

Defendants purport to proffer evidence that LVNV is *not* a debt collector—in the form of an unsworn, un-notarized document, styled "Affidavit", in which a so-called "Authorized Representative" of LVNV purports to testify that LVNV does not engage in debt collection. Other than describing herself as an "Authorized Representative of LVNV, Ms. Hammond gives no indication as to how she is competent to make the statements in the "Affidavit". In any case, "It is a settled rule in this circuit that an unsworn affidavit is incompetent to raise a fact issue precluding summary judgment." *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988). The same standard should apply here.

3

The affiant avers that LVNV's only business is "the purchase and holding of debts." ("Affidavit", ¶4.) But debt buying and debt collecting are *not* separate lines of business. Merely purchasing debt—without more—does not constitute a *business*. "Business" is defined as "a commercial enterprise carried on for *profit*." Black's Law Dictionary 211 (8th ed.2004) (emphasis added). *See also Drobny v. C.I.R*, 113 F.3d 670, 673 n.5 (7th Cir. 1996) (citations omitted) ("[I]n order to constitute a 'trade or business,' the activity in question must have had the 'actual and honest objective of making a profit.' An enterprise primarily intended to produce tax savings, without any significant likelihood of an economic profit, would not meet the definition of 'trade or business'.) Purchasing debt, without more, results in an outflow of money, not "profit." It is what LVNV does with the debts it purchases *after* purchase that discloses whether or not its principal purpose is debt collection.

Contrary to Hammond's "affidavit", LVNV does more than buy and hold debt. LVNV has a surety bond which is required of all debt collectors who engage in debt collection in Texas, TX. Fin. §392.101. (*Appendix 5.*) The Court can take judicial notice that, since January 1, 2015, LVNV has filed 1,290 collection lawsuits in four Texas counties: Denton, Fort Bend, Harris, and Tarrant. (*Appendix 6.*) In Cook County, Illinois, home to Chicago, Illinois, LVNV filed 1,000 cases between October 30, 2017 and February 21, 2018 alone, an average of about 250 cases per month. (*Appendix 7.*) Between September 13, 2017 and October 16, 2017, LVNV filed almost 1,000 cases in Cook County in the space of a single month. (*Appendix 8.*) In 2017, LVNV filed almost 1,300 cases in Illinois outside of Cook County. (*Appendix 9.*) This is not the conduct of a company whose principal purpose is merely "the purchase and holding of debts." (Affidavit. ¶4.)

Although Defendants argue that LVNV has no employees and does nothing other than hold

debt, purchasing and collecting charged-off debts is a unitary business activity that constitutes debt collection under the FDCPA. There is no business purpose in purchasing charged off debts if the ultimate goal is not to collect them. Unless the debts are turned into money their acquisition has no point. Debt buyers don't buy debts to use them as wallpaper, but to turn them into money. FTC reports discussing the debt buying industry describe the business of debt buyers, including purchasing and enforcing debts, as a single, discrete, unitary industry. Federal Trade Commission, *The Structure and Practices of the Debt Buying Industry* (January 2013).[1]

A debt buyer has to purchase the time-barred debt, place it for collection, and authorize collection of the debt, including through settlement. LVNV purchases debt and then, through a power of attorney with Resurgent (*Appendix 10*), authorizes placement of the debt for collection, and then authorizes settlement of the debt as necessary. This arrangement with Resurgent does not disqualify LVNV from being a debt collector under the FDCPA because the principal purpose of LVNV's business is still debt collection.

In *Dorrian v. LVNV Funding, LLC*, No. SUCV142684BLS2, 2017 WL 2218773 (Mass. Super. Mar. 30, 2017), the court described LVNV's business model in depth:

> LVNV is a Delaware limited liability company registered to do business in Massachusetts. In its Application for Registration filed with the Secretary of State, LVNV described the general character of its business as "consumer debt collection." In a letter to the Division of Banks dated August 3, 2012, LVNV's attorney described these debts as "previously defaulted consumer account portfolios." Although LVNV acquires these debts in order to collect on them and not for resale to others, it has never been licensed with the Division of Banks as a debt collector pursuant to the MDCPA. LVNV has stipulated that it uses instrumentalities of interstate commerce and the mails in conducting its business in Massachusetts.

---

[1] https://www.ftc.gov/sites/default/files/documents/reports/structure-and-practices-debt-buying-industry/debtbuyingreport.pdf).

Between August 2009 and the present, at least 99 percent of LVNV's gross revenue has been derived from collecting on unpaid consumer debts owned by it. LVNV itself has no employees, however. To perform the tasks necessary to collect the debts that LVNV has acquired, LVNV uses a separate entity, Resurgent Capital Services, LP (Resurgent). Resurgent is licensed with the Division of Banks as a debt collector. LVNV's Servicing Agreement with Resurgent states that Resurgent "shall service and administer the Receivables in accordance with ... The Fair Debt Collection Practices Act of 1977 (as amended) and comparable state statutes ..." The Servicing Agreement also grants Resurgent a "Limited Power of Attorney" to take certain actions on LVNV's behalf. That includes contacting the debtors to seek payment. Resurgent has full discretion to hire third parties to assist in the collection efforts and to retain law firms to bring collection actions. . . .

Although Resurgent is the entity that actually contacts debtors and hires counsel to institute litigation, LVNV is the named plaintiff in every collection action or claim made in connection with a defaulted consumer debt that it owns. Because it remains at all times the owner of the debt in question, it would necessarily be the source of all documentation underlying that debt. All proceeds from the collection claims instituted on LVNV's behalf go to LVNV. Between 2010 and 2015, over 18,000 lawsuits were brought against Massachusetts residents in Massachusetts courts seeking judgment on debts owned by LVNV. Judgment entered in over 17,000 of them. During that same time period, approximately 3,500 proofs of claims naming LVNV as the creditor were filed in bankruptcy cases in this Commonwealth where the debtor was a Massachusetts resident. Instructions were also sent to credit bureaus in LVNV's name concerning more than 600,000 distinct debt accounts of Massachusetts residents. There are approximately 6,175 accounts owned by LVNV in which a wage garnishment action was pending against a Massachusetts resident at some time between 2010 and May 2015.

The Illinois Supreme Court held that LVNV was subject to the Illinois Collection Agency Act, which governs entities which "receive, by assignment or otherwise accounts, bills or other indebtedness. . . with the purpose of collecting monies due on such account, bill or other indebtedness and engages in collecting the same." 225 ILCS 425/3(b)(d). *LVNV Funding, LLC v. Trice*, 2015 IL 116129, ¶ 25, 32 N.E.3d 553, 560, reh'g denied (May 26, 2015). The court specifically rejected LVNV's argument that it was insulated from liability because it hired an attorney to file the lawsuit:

> The argument that the public is protected from the abuses of unscrupulous debt buyers by their utilization of attorneys is equally meritless. It is, after all, the debt buyers who supply the evidence and witnesses to attorneys in the myriad complaints they file. We reject

6

LVNV's argument that debt buyers' lawsuits—with or without the involvement of counsel—pose no danger to the public welfare and are thus not subject to the restrictions and penalties the legislature has seen fit to impose. 32 N.E.3d at 560, reh'g denied (May 26, 2015)

Plainly, therefore, LVNV's business model is precisely the type of debt collection activity to which the "principal purpose" definition of "debt collector" applies.

### III. Plaintiff Does Not Misstate The Texas Statute of Limitations for Credit Card Accounts

As Defendants acknowledge, the statute of limitations in Texas on a credit card debt is four years. When the statute of limitations begins to run varies depending on whether a suit for breach of contract is claimed, in which case it is four years from when the cause of action accrues, which is when the contract is first breached; or a suit on an open account is claimed, in which case it is when the dealings with the parties cease. Tex. Civ. Prac. & Rem. Code §16.004(a)(3); *Williams v. Unifund CCR Partners*, 264 S.W.3d 231, 234 (Tex. Ct. App. 2008); *Ltd Acquisitions, LLC v. Cook*, No. 04-10-00296-CV, 2011 WL 61634, *2 (Tex. Ct. App. Jan. 5., 2011.) A breach occurs as soon as a payment is not made. Dealings between the parties cease when an account is about sixty days late, as the consumer will no longer be permitted to use the credit card.

The discrepancy in the events which trigger the statute of limitations to begin to run need not undermine commonality, predominance, or typicality. Federal banking regulations require financial institutions to cease carrying delinquent receivables as valid assets on their books when they are 180 days past due (open end credit, such as credit cards and lines of credit) or 120 days past due (closed end credit, such as retail installment contracts). This is what is known as "charge off," and is required in order to prevent institutions from appearing to be in better financial condition than they are, thereby misleading investors and bank examiners. Federal Financial Institutions Examination

7

Council, Uniform Retail Credit Classification and Account Management Policy, 65 FR 36903 (June 12, 2000). (*Appendix 11*.). Upon charge-off, there are no further dealings between the parties, and the account is clearly in default.

In light of the requirement that credit card accounts be charged off 180 days after default, Plaintiff proposes that the class definitions be modified as follows:

Class A consists of (a) all individuals with Texas addresses (b) to whom First National Collection Bureau, Inc. (c) sent a letter offering a settlement of a debt (d) which debt was a credit card debt on which the last payment *or activity* had occurred more than four years **and 180 days** prior to the letter, (e) which letter was sent on or after June 15, 2014 and on or before July 6, 2015.

Class B consists of (a) all individuals with Texas addresses (b) to whom a letter was sent on behalf of LVNV, LLC, (c) offering a settlement of a time-barred debt (d) which debt was a credit card debt on which the last payment *or activity* had occurred more than four years **and 180 days** prior to the letter, (e) which letter was sent on or after June 15, 2014 and on or before July 6, 2015.

This change to the class definitions moots Defendant's arguments that the difference in when the statute of limitations begins to run defeats Plaintiff's claims to have met Rule 23's commonality, predominance, and typicality requirements. Courts have discretion to "limit or modify" a plaintiff's class definition. *In re Monumental Life Insurance*, 365 F.3d 408, 414 (5th Cir.), cert. denied, 543 U.S. 870 (2004); *Barnett v. Experian Info. Sols.*, No. CIV.A. 2:00CV175, 2004 WL 4032909, at *2 (E.D. Tex. Sept. 30, 2004) (accord).

## **CONCLUSION**

For the foregoing reasons, and those set forth in Plaintiff's original motion, Plaintiff respectfully urges the Court to grant Plaintiff's motion for class certification.

Respectfully submitted,

/s/ Francis R. Greene
Francis R. Greene (IL Bar No. 6272313)
Daniel A. Edelman (IL Bar No. 00712094)
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)
dedelman@edcombs.com
fgreene@edcombs.com

Daniel Ciment
CIMENT LAW FIRM
P.O. Box 5845
Katy, TX 77491
Phone/Fax 833-663-3289
Daniel@CimentLawFirm.com

**CERTIFICATE OF SERVICE**

      I, Francis R. Greene, hereby certify that on February 23, 2018, I caused to be filed the foregoing documents with the Clerk of the Court using the CM/ECF System which will cause to be sent notification of such filing to all counsel of record.

                                        /s/ Francis R. Greene
                                        Francis R. Greene